IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT ZEHNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-03023-CV-S-NKL-SSA |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Robert Zehner's ("Zehner") Social Security Complaint [Doc. # 3]. Zehner seeks judicial review of the Commissioner's denial of his request for disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act before. The Administrative Law Judge ("ALJ") found that Zehner was not entitled to benefits before June 10, 2005, and such determination became the final decision of the Commissioner when the Appeals Council denied Zehner's request for review. Zehner has exhausted his administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court concludes that the ALJ failed to

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

adequately consider Zehner's severe impairments as well as the opinion of his treating physician, this matter is remanded to Defendant for further consideration.

## I.      Factual Background

Robert Zehner worked as a watch repairman between 1974 and 1999, then briefly as a cashier and grocery sacker in Springfield, Missouri, until becoming disabled as a result of panic attacks, agoraphobia, major depression and moderate to severe anxiety disorder. (Tr. 17). Zehner began experiencing panic attacks at least since 2002, but "hid [them] because he was ashamed of them." (Pl. Brief, 1). Prior to seeking professional treatment, Zehner attended meetings of the National Alliance for the Mentally Ill ("NAMI") for support. (Tr. 269). Starting on June 21, 2004, Zehner began treatment with Ozarks Counseling Center for his panic attacks, anger, grief/loss and generalized anxiety. (Tr. 16). He was also referred to Rehabilitation Services for the Blind as he was having problems with his vision. (Tr. at 89). In July 2004, Zehner worked for a temporary service for two days, but the service dismissed him. (Tr. at 88). Because he was unable to keep a job, he applied for disability insurance benefits and supplemental security income on July 9, 2004. (Tr. at 47-51). After applying for benefits, Zehner returned to Ozarks Counseling Center on July 14, 2004. Between July 2004 and September 2004, Zehner's condition vacillated. (Tr. 81, 83). Also in August 2004, Zehner reported to Vision Enhancement Clinic. His corrected vision was noted at 20/30 in both eyes, but he was also diagnosed with convergence insufficiency that would cause significant problems with focusing tasks for extended periods of time. (Tr. at 92).

2

On January 13, 2005, Zehner was referred to Dr. David Lutz, Ph.D., for a consultative psychological examination. Dr. Lutz diagnosed Zehner for major depression and moderate to severe anxiety disorder. Dr. Lutz assigned Zehner with a Global Assessment Function ("GAF") of 50, indicating moderate to severe symptoms. (Tr. at 99). The GAF is a 100-point tool rating overall psychological, social and occupational functioning of people over 18 years of age and older. It excludes physical and environmental impairment. Dr. Lutz also noted that his rating assumed improvement with further treatment. (Tr. at 99). In April 2005, Zehner began treatment at the Kitchen Clinic where he was diagnosed with panic disorder. (Tr. at 229). Zehner received refills of his prescription for Paxil from the Kitchen Clinic until he started treatment with Raquel Muller, Ph.D., on June 10, 2005. (Tr. 226, 229).

Zehner reported to Dr. Muller that he suffered from panic attacks which for several years "seem[ed] to control his life . . ." (Tr. 269). During treatment for the panic attacks and resulting anxiety disorder, Dr. Muller also diagnosed Zehner with agoraphobia. (Tr. 17). Dr. Muller assessed Zehner with a GAF of 32, with the highest GAF score of 38 in the past year. (Tr. at 270-271). Zehner continued regular treatment with Dr. Muller through February 2006. On November 28, 2005, Dr. Muller indicated that Zehner had extreme limitations in 9 areas and moderate limitation in 9 areas of 20 areas considered on a Medical Source Statement - Mental Form: he was extremely limited in the ability to understand and remember detailed instructions; the ability to carry out very short and simple instructions; the ability to maintain attention and concentration for extended

3

periods; the ability to sustain an ordinary routine without special supervision and the ability to respond appropriately to changes in the work setting; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a constant pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public and the ability to travel in unfamiliar places or use public transportation. (Tr. at 125-126). On a subsequent exam performed on February 27, 2006, Dr. Muller reported extreme or moderate limitation in all 20 areas. *Id.* Zehner alleges disability as of April 30, 2004. (Tr. 16).

On June 21, 2006, Zehner appeared for a hearing in front of Administrative Law Judge George R. Wilhoit. Zehner testified that he first suffered a panic attack in 1994 and continued to suffer from unpredictable attacks three to four times weekly; with each episode lasting approximately thirty minutes to one hour. (Tr. 292). Zehner also reported failing eyesight and extreme sensitivity to light. (Tr. 291). Zehner testified that he struggles with depression. (Tr. 296).

On July 14, 2006, the ALJ issued a partially favorable decision. The ALJ determined that prior to June 10, 2005, Zehner's residual functional capacity ("RFC") permitted "semi-skilled work activity and the ability to work in moderately demanding social situations." (Tr. 19). The ALJ gave "the opinion of David Lutz, Ph.D. as an examining medical source the greatest weight for [Zehner's] mental capacity" prior to

4

June 10, 2005. The ALJ further concluded that although Zehner had a "major depressive disorder" prior to professional treatment, it resulted in "no restriction of activities of daily living . . . ." (Tr. 19). The ALJ found that Zehner was "disabled" for purposes of section 1614(a)(3)(A) of the Social Security Act beginning with his treatment with Dr. Muller on June 10, 2005. The ALJ then relied upon vocational expert testimony to determine that Zehner was able to perform work as a cashier and bagger prior to June 10, 2005. (Tr. 19).

## II.     Discussion

To establish that he is entitled to benefits before June 10, 2005, Zehner must show that he was unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d) and § 1382c(a)(3)(A).

### A.     The ALJ Failed to Identify All of Zehner's Severe Impairments

Following the hearing, the ALJ issued a written opinion denying benefits before June 10, 2005, in which he found that Zehner had a major depressive order. (Tr. 19). Despite the impairments diagnosed by Dr. Muller and testified to by Zehner, the ALJ did not find that Zehner's depression was a "severe" impairment within the meaning of the Social Security regulations. (Tr. 15). Nor did the ALJ address Zehner's anxiety disorder.

In the Eighth Circuit, for an impairment not to be considered "severe" within the meaning of the Social Security regulations, it can have "no more than minimal effect on [a] claimant's ability to work." *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). In this case, Dr. Muller diagnosed Zehner with depression and anxiety disorder. Zehner's

medical records suggest that he had trouble performing everyday activities such as grocery shopping. (Tr. 226). Given the evidence that Zehner's depression, anxiety and agoraphobia sometimes prevented basic life activities, it was unreasonable for the ALJ to find that his failure to seek treatment for his depression, therefore, meant the depression was not severe. Failure to get treatment for depression, standing alone, does not mean the depression has no impact on a claimant's ability to work. Moreover, the ALJ did not address Zehner's anxiety disorder which may have also affected his ability to work.

### B. The ALJ Failed to Assign Proper Weight to the Medical Evidence

The Eighth Circuit Court of Appeals requires an ALJ to consider all evidence in the record when determining a claimant's residual functional capacity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citation omitted). In determining Zehner's RFC, the ALJ concluded that Zehner retained the ability to do "semi-skilled work activity and the ability to work in moderately demanding social situations." (Tr. 19). The ALJ based his assessment of Zehner's abilities primarily on the report of Dr. Lutz. *Id*.

A treating physician's opinion is generally given controlling weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). Although Dr. Muller was Zehner's treating physician from June 10, 2005, until his hearing, Dr. Muller provided assessments based on her observations indicating a period of disability that originated at least one year before that date. (Tr. 270-71). She recorded that Zehner could not move past an empty parking lot to enter a YMCA; felt unable to travel more than three miles from his home

6

and continued to suffer panic attacks. (Tr. 258-63). When taking the testimony of the vocational expert, the ALJ asked whether, if he made findings consistent with Dr. Muller's assessment, Zehner could return to past relevant work. The expert replied, "No, Your Honor." (Tr. 300). In this case, the ALJ erred in failing to give Dr. Muller's opinion sufficient weight relative to the assessment of Dr. Lutz. As compared to Dr. Muller, Dr. Lutz examined Zehner on a very limited basis. Considering the record as a whole, the ALJ has not provided an adequate explanation as to why Dr. Lutz's conclusions are controlling for the entire period leading up to June 10, 2005. As a result, the ALJ erred in determining Zehner's RFC.

**III.      Conclusion**

Accordingly, it is hereby

ORDERED that Zehner's Petition [Doc. # 3] is GRANTED IN PART. The decision of the ALJ is REVERSED and the case is REMANDED for further consideration consistent with this ORDER.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  October 5, 2007
Jefferson City, Missouri